UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN VELARDE, by and through his successor in interest, MARIA AGUIRRE, MARIA AGUIRRE,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA; CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; CALIFORNIA CORRECTIONAL CENTER; WARDEN ROBERT GOWER; OFFICER DONALD MAYDOLE; and Does 1 through 10, inclusive,<br><br>Defendants. | No. 2:16-cv-01297-MCE-GGH<br><br>**MEMORANDUM AND ORDER** |

In bringing the present action, Plaintiff Maria Aguirre, both individually and as successor to her deceased son, Jonathan Velarde (hereinafter "Plaintiff") alleges her son was wrongfully shot and killed during the course of a prison riot at the California Correctional Center in Susanville, California, a prison operated by Defendant State of California/California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff's currently operative First Amended Complaint ("FAC") alleges various violations of

42 U.S.C. § 1983 along with state law claims for violations of California's Bane Act, Cal. Civ. Code § 52.1, battery and negligent infliction of emotional distress.

Through the Motion to Dismiss now before the Court, Defendant CDCR and individually named Defendant Officer Donald Maydole move to dismiss Plaintiff's FAC, alleging that the causes of action pled fail to state viable claims for various reasons, and consequently merit dismissal under Federal Rule of Civil Procedure 12(b)(6).[1] As set forth below, Defendants' Motion is GRANTED in part and DENIED in part.[2]

## BACKGROUND[3]

According to the FAC, after being convicted in Los Angeles County for marijuana possession in September 2013, Velarde was incarcerated at Defendant CDCR's Susanville facility. On August 16, 2017, a riot apparently involving Black and Hispanic inmates erupted in the prison's dining hall.

Plaintiff claims that Velarde, a Hispanic man, was physically attacked by a Black inmate as he walked to a table to eat. Although neither individual possessed any actual weapon, Velarde defended himself and the two became engaged in mutual combat. Velarde himself did not start the confrontation.

As further fighting broke out and a riot ensued, Defendant Maydole was positioned in a room protected by bars and positioned above the dining hall. Maydole proceeded to fire a rifle at Velarde an unknown number of times. One shot hit Velarde's chest and proved fatal.

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise indicated.

[2] Because the Court determined that oral argument would not be of material assistance, this Motion was submitted on the briefs in accordance with Local Rule 230(g).

[3] This section is taken directly, and in some instances verbatim, from the allegations contained in Plaintiff's FAC.

2

According to Plaintiff, given his position in the secured room perched over the dining hall, Maydole could have subdued the altercation through less lethal means like pepper spray, rubber bullets or smoke bombs but instead chose to shoot and kill her unarmed son. Plaintiff thus contends that Maydole acted maliciously and sadistically in resorting to unnecessary and excessive force, and in so doing also demonstrated a deliberate indifference and disregard for her son's life.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

///

1 | Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

///
///

**ANALYSIS**

A. **Claims Against the State Entities and Defendant Maydole in his Official Capacity**

As Defendants point out, the Eleventh Amendment of the United States Constitution bars this Court from hearing claims premised on 42 U.S.C. § 1983 against a non-consenting state or state agency. See Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Nonetheless, Plaintiff purports to bring claims against the State of California and the CDCR under § 1983 in her Second, Fourth and Fifth Causes of Action.

In addition to being barred by the Eleventh Amendment, there also may be no claim against a state, state agency, or state official acting in his official capacity who is sued for damages, because such entities and/or individuals are not considered "persons" amenable to suit under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("neither a state nor its officials acting in their official capacities are 'persons' under § 1983"); Wooten v. California Dep't of Corrections, No. 1:13-cv-00570 JLT (PC), 2013 WL 1932711 at *3 (E.D. Cal. May 8, 2013) (CDCR is immune for suit). This is consequently another reason why Plaintiff's suit, to the extent it asserts § 1983 claims against either the State Defendants or Defendant Maydole in his official capacity, must fail.

Plaintiff, for her part, does not dispute this authority and claims only that "an official sued in his individual capacity is a person subject to liability under the statute." Opp., 4:17-18, citing Hafer v. Melo, 502 U.S. 21, 27 (1991). She is correct that claims for individual liability against a government officer for actions taken under color of state law are permissible. Id., see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). That argument is insufficient, however, to save the claims against Maydole in his official capacity. Consequently, the Court grants Defendants' Motion to Dismiss insofar as it

5

pertains to all § 1983 claims against the State entities (in the Second, Fourth and Fifth Causes of Action)[4] and with respect to any official capacity claims in the FAC against Defendant Maydole.

B. **Qualified Immunity as to Defendant Maydole**

Defendants next assert that to the extent Maydole is potentially subject to any claim of individual malfeasance in this matter, the doctrine of qualified immunity shields him from any resulting liability. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The rule permits officials to undertake their responsibilities without fear they will be held liable for actions that appeared reasonable at the time but were late held to violate statutory or constitutional rights. See Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). Qualified immunity consequently prohibits second-guessing life and death decisions by officers who must make on-the-spot choices in dangerous situations, even if the situation could arguably have been handled differently. See, e.g., City and County of San Francisco, Calif. v. Sheehan, 135 S. Ct. 1765, 1777 (2015).

Courts analyze qualified immunity under a two-prong test. First, it must be discerned whether the alleged facts constitute a constitutional violation. Second, if such a violation did occur, a court must find whether or not the constitutional right at issue was clearly established at the time of the violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Plaintiff bears the burden of demonstrating that the constitutional right in question was clearly established at the time the official acted. May v. Baldwin, 109 F.3d 557, 561 (9th Cir. 1997).

///

---

[4] The Fourth and Fifth Claims are claims for unconstitutional customs, practices and policies, and for supervisorial liability that appear to rely on Monell v. Department of Social Services, 436 U.S. 658 (1978). No valid cause of action in this regard lies, however, since Monell applies to municipalities and local governments, not states. Id. at 690.

Defendants assert that to the extent Maydole acted in the course of a prison riot, case law recognizes such riots as threats to prison safety and security that must be stopped. Dennis v. Thurman, 959 F. Supp. 1253, 1260 (C.D. Cal. 1997). The law also recognizes, however, that in the context of a prison riot or other mass threat to prison security, dangerous force may be used to restore order only to the extent reasonable to do so. See Whitley v. Albers, 475 U.S. 312, 323-24 (1966), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010).

In arguing that Maydole did not violate a clearly established right, and in claiming that it was reasonable for him to use the force he did, Defendants cite to Title 15 of the California Code of regulations, which authorizes deadly force reasonably necessary to "[s]top acts such as riots . . . that constitute an immediate jeopardy to institutional security, and because of their magnitude, are likely to result in escapes, great bodily injury, or the death of persons." Cal. Code Regs., tit. 15, § 3268(d)(3). Defendants also point out that prison regulations expressly prohibits inmates from participating in riots. Id. at § 3005(d)(3).

The Court is unpersuaded by the argument that the need to quell prison riots gave Maydole carte blanche authority to use whatever dangerous force he chose. According to Plaintiff's complaint, Maydole was perched in a barred space over the dining hall where the disturbance broke out, and from the relative safety of that perch elected to shoot inmates in the room below. Using his firearm in that circumstance does not invoke a life-and-death situation whose response by the officer merits qualified immunity, especially against someone like Velarde who by all indication played no role in starting the altercation. Instead, even under the law cited by Defendants, Maydole's use of force in the instance in question must have been reasonable, and here the Court cannot say as a matter of law that it was. As such, Maydole is not entitled to qualified immunity.

///

///

**C.     Claims Against Defendant Maydole in his Personal Capacity**

**1.     Eighth Amendment**

To state a claim for excessive force in violation of the Eighth Amendment, a plaintiff must allege facts showing that the accused official had a "sufficiently culpable state of mind." See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).  Defendants allege that excessive force claims in this regard require a showing that that the government official, here Defendant Maydole, acted maliciously and sadistically for the purpose of causing harm, rather than in a good-faith effort to restore and maintain discipline.  See Hudson v. McMillian, 503 U.S. 1, 7 (1992).  According to Defendants, Plaintiff's allegation that Maydole acted "without any just or reasonable cause, either intentionally, maliciously, sadistically, deliberately, recklessly and/or carelessly [in firing] his rifle at Velarde an unknown number of times" (FAC, ¶ 15) is conclusory and insufficient to permit the Court to draw a reasonable inference that Maydole acted with the intent required under Hudson.

Plaintiff goes on to allege, however, that Maydole acted maliciously and sadistically because he "was in a room above the inmates, protected by bars and could have subdued the altercation with less force via the use of pepper spray, rubber bullets, smoke bombs and/or other department issued weapons that were far less lethal and likely to cause fatality under the circumstances." Id. at ¶ 17.  Plaintiff further claims that Maydole also should have responded with less than lethal force because neither Velarde nor the Black inmate who initiated the confrontation possessed weapons as they engaged in combat.  Id.

Despite Defendants' protestations to the contrary, these allegations are more than enough to permit an inference that Maydole acted with the requisite intent to support an excessive force violation under the Eighth Amendment.  Consequently, the Court rejects

///

///

///

Defendants' motion to dismiss Plaintiff's First and Second Causes of Action made on that basis.[5]

### 2. Fourth Amendment

In addition to her excessive force claim made pursuant to the Eighth Amendment, Plaintiff's First Cause of Action also purports to make the same claim under the Fourth Amendment. As Defendants point out, however, only the Eighth Amendment is implicated in excessive force claims by a convicted prisoner. Dennis, 959 F. Supp. at 1256 n.1 (citing Graham v. Connor, 490 U.S. 386, 393-95 n.10 (1989)). Plaintiff offers no opposition to this argument and Defendants' dismissal request in this regard is granted.

### 3. Fourteenth Amendment

A substantive due process claim under the Fourteenth Amendment requires a showing that the "challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996). Only official conduct that "shocks the conscience is cognizable as a substantive due process violation." Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013).

Defendants contend that because case law recognizes that threats to prison safety and security must be stopped, Defendant Maydole's efforts to do so cannot "shock the conscience." The Court disagrees. As indicated above, Plaintiff alleges that Maydole fired a rifle from a protected position, physically separated from the combatants themselves, at unarmed individuals and killed her son. Those allegations are sufficient for pleadings purposes to state a viable Fourteenth Amendment substantive due process claim, and Defendants' motion to dismiss the Second Cause of Action on that basis is denied.

---

[5] Because the Court finds that Plaintiff's claim predicated on the Eighth Amendment survives on grounds that the necessary intent can be inferred from Maydole's conduct alone, the Court need not address Defendants' alternative argument that Plaintiff has not shown the deliberate indifference that could also support the claim.

1       **D.**     **Claims Presentation Requirements**

The California Government Claims Act ("GCA") requires that any civil complaint for money or damages be first presented, and rejected by, the pertinent public entity. Estate of Elkins, 2014 WL 4960802 at *2 (quoting General Sec. Servs. Corp. v. County of Fresno, 815 F. Supp. 1123, 1131 (E.D. Cal. 2011)); see also Cal. Gov't Code § 945.4. A claim for personal injury against a public entity or employee must be presented no later than six months after the cause of action accrues and must contain (1) the date, place, and circumstances of the occurrence; (2) a general description of the loss incurred; and (3) the name(s) of the public employees(s) causing the loss. Cal. Gov't Code §§ 910(c)-(e), 911.2(a); State of California v. Superior Court, 32 Cal. 4th 1234, 1239 (2004). Timely claim presentation is a procedural requirement and condition precedent to maintaining an action against public defendant and is therefore an element of the plaintiff's cause of action. Shirk v. Vista Unified School Dist., 42 Cal. 4th 201, 209 (2007). "Failure to allege compliance or an excuse for noncompliance constitutes a failure to state a cause of action and results in a dismissal of such actions." Estate of Elkins, 2014 WL 4960802 at *2.

Here, in addition to federal claims premised on various violations of 42 U.S.C. § 1983, Plaintiff also alleges state law claims for violations of the Bane Act, California Civil Code § 52.1, for common-law battery, and for negligence and for negligent infliction of emotion distress. Defendants contend, however, that because the FAC does not allege either compliance or an excuse from compliance with the GCA, these state law claims must be dismissed.

Defendants are correct that the FAC contains no averments as to claims presentation, and in the absence of such allegations Plaintiff's state claims are indeed subject to dismissal. As Defendants concede, however, Plaintiff filed a claim in her personal capacity as a result of the subject August 16, 2015 incident. See Defs.'

///

///

Request for Judicial Notice ("RJN") Ex. B.[6] While Defendants argue that this claim cannot possibly suffice for purposes of presentation requirements, the Court disagrees.

Under the doctrine of substantial compliance, if a governmental entity is furnished with sufficient information to investigate the claim and no prejudice appears from the defect, a claim can proceed despite its technical shortcomings. See Dillard v. Kern, 23 Cal. 2d 271, 278 (1943). For purposes of claim presentation, the doctrine focuses on whether there is some compliance with all of the statutory requirements, and if so, whether that compliance should be deemed sufficient. San Jose v. Superior Court, 12 Cal. 3d 447, 456 (1974). Here, despite Plaintiff's failure to allege compliance in the FAC, as Defendants point out, she did make a claim, which was rejected, before filing the instant lawsuit. Examination of Plaintiff's GCA claim, dated January 4, 2016, indicates that it includes Plaintiff's name as claimant, the identity of her son, and a description of her son's death as follows:

> On 8/16/15, during a prison riot at the dining hall, Jonathan Velarde was shot in the chest by a correctional officer. It is Claimant's belief that the shooter was Officer Donald Maydole. Officer Maydole unnecessarily used deadly force in violation of Mr. Velarde's right to be free from cruel and unusual punishment, under 42 U.S. Section 1983.

Defs.' RJN, Ex. B., p. 16.

These averments are sufficient to put Defendants on notice as to both Plaintiff's individual claims and her claims as her son's successor in interest. Therefore, in the Court's view, Plaintiff substantially complied with the GCA's claims presentation requirements. Accordingly, while the Court does dismiss Plaintiff's state law claims for failure to allege the necessary compliance, it believes that Plaintiff can successfully amend her complaint to make the necessary allegations and affords her leave to do so.

///

///

///

---

[6] Defendants' RJN, made pursuant to Federal Rule of Evidence 201, is unopposed and is granted.

## CONCLUSION

Based on all the foregoing, Defendants' Motion to Dismiss (ECF No. 16) Plaintiff's FAC is GRANTED in part and DENIED in part as follows:

1. Plaintiff's claims against Defendant State of California and the CDCR under 42 U.S.C. § 1983, as set forth in the Second, Fourth and Fifth Causes of Action, are DISMISSED, without leave to amend.

2. Plaintiff's claims against Defendant Maydole, as alleged in the First, Second and Third Causes of Action, are DISMISSED, without leave to amend, to the extent they are alleged against Maydole in his official capacity.

3. Defendant Maydole's request for dismissal on grounds of qualified immunity is DENIED.

4. Plaintiff's claims against Defendant Maydole in his individual capacity are permitted except to the extent they are predicated on the Fourth Amendment.

5. Plaintiff's causes of action based on state law, as set forth in the Eighth, Ninth and Tenth Causes of Action, are DISMISSED with leave to amend for failure to allege satisfaction of claim presentation requirements.

6. Should Plaintiff wish to file a Second Amended Complaint in accordance with the directives of this Memorandum and Order, she must do so not later than twenty (20) days after the date this Memorandum and Order is electronically filed. If Plaintiff fails to timely file an amended complaint, the causes of action dismissed by way of this Order will be deemed dismissed with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

Dated: September 29, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE